IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.  NO. 1:15-CR-00102

QUIN LI and
ZHANG YONGDI a/k/a YONGDI ZHANG

## MEMORANDUM OPINION AND ORDER

This criminal action is before the Court on the motion to dismiss of Zhang Yongdi a/k/a Yongdi Zhang, which has been joined by Qin Li. Doc. #22; Doc. #27. Because the search and the seizure of the challenged evidence were each justified by the automobile exception to the Fourth Amendment's warrant requirement, the motion and joinder will be denied.

## I
## Procedural History

On August 26, 2015, a grand jury returned a three-count indictment charging Quin Li and Yongdi Zhang with conspiracy to commit fraud with counterfeit access devices, in violation of 18 U.S.C. § 1029(a); and two counts of the use of counterfeit access devices, in violation of 18 U.S.C. § 1029(a). Doc. #1. On August 17, 2016, Zhang filed a motion seeking to suppress all physical evidence and statements obtained during a June 4, 2015, search of a Silver Chevy Tahoe driven by Zhang and occupied by Li. Doc. #22. The motion requested an evidentiary hearing on the issue. *Id*. at 4. On August 19, 2016, Li filed a notice joining Zhang's motion. Doc. #27. The Government responded in opposition to the motion on August 26, 2016. Doc. #32. An evidentiary hearing on the motion was held September 13, 2016, pursuant to notice by the Court. Doc. #31.

## II
## Standard of Review

"The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014). Where evidence has been obtained through a warrantless search and seizure, "the government bears the burden of proving, by a preponderance of the evidence, that the search and seizure were constitutional." *United States v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012). In conducting a suppression hearing, a court is not bound by the Federal Rules of Evidence.[1] Fed. R. Evid. 104(a); *United States v. Posado,* 57 F.3d 428, 435 (5th Cir. 1995) ("We have consistently held that the rules of evidence are relaxed in pretrial suppression hearings.").

## III
## Factual Background

On June 4, 2015, New Albany Police Investigator David Cossitt heard on the police radio that someone was leaving Lowe's Home Improvement Store after having tried to use a stolen or fraudulent credit card, and that a highway patrolman had stopped the "suspect vehicle." The call from Lowe's stated that "a couple of Asian males ... came into the store and attempted to use [a] stolen credit card." The call noted that the men were driving a silver Chevrolet Tahoe. Cossitt

---

[1] At the hearing, counsel for Zhang raised hearsay and Confrontation Clause objections to the consideration of hearsay during the Government's examination of its first witness. However, "hearsay evidence is appropriate and admissible at suppression hearings ...." *Glidden v. Sparkman*, No. 1:12-cv-62; 2014 WL 467741, at *4 (S.D. Miss. Feb. 6, 2014); *see Wallace v. Rivard*, No. 14-14535, 2016 WL 3055617, at *5 (E.D. Mich. May 31, 2016) ("Courts ... have consistently held that the Confrontation Clause does not apply to pre-trial hearings.") (collecting cases); *see also United States v. Ramos*, No. CR 15-3940, __ F. Supp.3d __, 2016 WL 4487923, at *1 n.3 (D.N.M. July 11, 2016) ("[T]he courts that have decided whether the Confrontation Clause applies to suppression hearings have found that *Crawford v. Washington* does not apply to suppression hearings.") (collecting cases). Even if the hearsay rules and Confrontation Clause applied to the hearing, the objection would be overruled because the relevant testimony was offered to show why the officers took specific actions, not for the truth of the matter asserted.

and his partner, Jeff Chism, drove to the scene of the traffic stop, which was approximately a quarter of a mile from the Lowe's store.

Cossitt and Chism arrived at the scene and observed a silver Chevrolet Tahoe with West Virginia plates[2] with six passengers, including Zhang (the driver) and Li (who was seated in the third of three rows). The officers spoke with Mississippi Highway Safety Patrol Officer Mark Pitner, who told the officers that, while in Lowe's, he was flagged down by a store employee who told him that a "couple" males had come into the store and attempted to purchase gift cards with what appeared to be fraudulent or stolen gift cards. Pitner relayed to the officers that he stopped the Tahoe after observing the men run out of the store and turn out of the Lowe's parking lot.

After speaking with Pitner, the officers began to speak with the driver, later identified as Zhang, but soon determined there "was a language barrier." Chism asked if anybody in the vehicle could speak English. One of the female passengers, later identified as Xiaoran Liu, said that she could. The officers then asked Zhang and Liu to step out of the car.

Chism asked Zhang if there was anything illegal in the vehicle and, if not, whether Zhang "mind[ed] us looking." Cossitt could not recall whether Chism stated that Zhang was free to refuse the request to search. According to Cossitt, it "appear[ed]" that Liu translated this question. Zhang "nodded his head and gestured his hand toward the Tahoe palm up as if to say go ahead." The officers removed the occupants from the vehicle and proceeded to conduct a search. During the search, the occupants, including Zhang and Li, were "in the immediate vicinity" of the Tahoe, "probably no more than 10-feet away." None of the occupants objected to the search.

---

[2] It was later revealed the Tahoe was rented in Zhang's name.

At the beginning of the search, Cossitt observed approximately six credit cards sitting in a cup-holder between the driver and passenger seats. According to Cossitt, it appeared that the occupants of the car were on a road trip. During the search, Cossitt found a plastic bag in the back or middle row of seats, "somewhere right inside [th]e back [passenger] door." The plastic bag contained two white socks which held approximately fifty credit cards. The bag was located within arm's reach of where Li was seated.

Chism then went back to the police station to obtain a card scanner which "brings up on a Word document what is on the magnetic strip." After Chism returned to the location of the traffic stop, he ran the cards through the scanner. According to Cossitt, "most" of the information on the magnetic strips of the cards did not match the information embossed on their fronts.

After scanning the cards, the officers arrested the occupants of the car and took them to the police station for questioning. At the station, the officers attempted to use Liu to interpret their questions but stopped when they believed she was not fully translating the questions asked or answers to them.

The next day, the officers obtained a search warrant for the Tahoe and conducted a second search.[3] The search revealed more credit cards with magnetic strips containing different information from that embossed on the front. Additionally, the officers located "numerous" gift cards which appeared to have been purchased with fraudulent cards. During the hearing, both officers testified that if they had not received consent, they would have obtained a search warrant.

---

[3] Cossitt testified that if he had not received consent to search the Tahoe, he would have obtained a search warrant that day. He estimated he could have obtained a search warrant in approximately thirty minutes to an hour.

IV
**Analysis**

In the motion, Zhang and Li[4] argue that the officers conducted an illegal warrantless search of the Tahoe and that, therefore, suppression is required. The Government responds that suppression should be denied because: (1) Zhang consented to the search; (2) the search was justified by the automobile exception; and (3) the evidence would have inevitably been discovered.

### A. Consent to Search

> When courts review a search justified by consent, there are four distinct issues. First, as a threshold matter, the government must demonstrate that the defendant did consent. If a defendant consents to a search, probable cause analysis is inapplicable, and the search is measured against the general Fourth Amendment requirement of reasonableness. Existence of consent is determined based on the totality of the circumstances.
>
> Once the government has demonstrated consent, the next issue is whether it was voluntary. Voluntariness is to be determined based on the totality of the circumstances, with the burden of proof on the government.
>
> If the government demonstrates voluntary consent, two issues remain: whether the search was within the scope of the consent granted; and whether the consenting individual had authority to consent. Unlike the first two issues, scope and authority are not determined based on a totality-of-the-circumstances standard, but rather by a reasonable-officer standard. The burden of proof remains on the government.

*United States v. Dilley*, 480 F.3d 747, 748–49 (5th Cir. 2007) (internal footnotes omitted).

The defendants argue that, due to Zhang's inability to understand the English spoken by Chism, he was unable to give voluntary consent. Additionally, Li argues that even if valid, Zhang's consent did not include the search of the bag and socks, of which Li claimed ownership.

---

[4] "[P]assengers who assert neither a property nor a possessory interest in the automobile to be searched, nor any interest in the property seized, have no legitimate expectation of privacy entitling them to the protection of the Fourth Amendment." *United States v. Iraheta*, 764 F.3d 455, 461 (5th Cir. 2014). The Government argues that Li has no property or possessory interest in the automobile nor has he claimed any interest in the property seized. At the hearing, Li, through counsel claimed ownership of the bag and the socks. The Court, therefore, concludes that Li has standing to challenge the seizure.

5

The Government responds that Zhang's reaction to Chism's question shows that he understood and that the consent included the bag and socks.

The Fifth Circuit has recognized six factors that are relevant to deciding voluntariness of consent: "(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found." *United States v. Samuels*, 628 F. App'x 322–23 (5th Cir. 2016) (citing *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995)).

The parties focused their briefing on Zhang's ability to understand the request to search. Courts in the Fifth Circuit have considered arguments about a person's ability to understand English under the fifth voluntariness factor. *See United States v. Lopez*, 817 F.Supp.2d 918, 929 (S.D. Miss. 2011) ("That language barrier inhibited Lopez's ability to act knowingly and intelligently – two necessary components of valid consent."); *see also United States v. Barry*, 979 F.Supp.2d 715, 720 (M.D. La. 2013) (where language barrier existed, education and intelligence weighed against voluntariness). Accordingly, the Court will address the fifth factor first.

The evidence at the hearing revealed that Zhang speaks Mandarin Chinese and no English. Accordingly, unless the request to search was presented to Zhang in Mandarin Chinese (the only language the evidence shows he understands), then it is clear Zhang lacked the education and intelligence to voluntarily consent to the search. In this regard, while the evidence shows that Chism used a passenger in the car (Liu) to translate, there is no evidence as to what was actually translated. Indeed, there is no evidence Liu even asked the question in Mandarin

Chinese. Under these circumstances, the Court must conclude that the fifth factor weighs heavily against a finding of voluntariness. *See United States v. Xiao Meng Ma*, No. CR 12-10, 2012 WL 5387068, at *7 (D. Mont. Nov. 1, 2012) (no voluntariness where Chinese speaking defendant "appeared to consent" after officer "attempted to ask for consent with his iPhone translator, but it [was] unclear whether the translation was accurate or whether [defendant] knew which bags he was referring to").

Turning to the remaining factors, Cossitt testified that at the time Zhang was removed from the car, he was not free to leave. Thus, the first factor (custodial status) weighs against the Government.

When considering the second factor (coercive police procedures), a court should consider whether the defendant was taken into custody, handcuffed, threatened with violence, or subjected to an "overt display of authority." *United States v. Tompkins*, 130 F.3d 117, 122 (5th Cir. 1997). In this case, while Zhang was, as explained above, in custody, he was not handcuffed, threatened with violence, or otherwise subjected to an overt display of authority. Accordingly, the second factor weighs slightly in favor of the Government.

As to the third factor (extent and level of cooperation with police), the evidence shows that Zhang complied with the officer's request to exit the car, nodded and pointed to the car in response to an unknown question from Liu, and did not object to the search once it began. This factor weighs slightly in favor of the Government.

Turning to the fourth factor (awareness of right to refuse consent), there is no evidence Zhang was informed of his right to refuse the request to search.[5] Accordingly, this factor weighs in favor of Zhang.

---

[5] Given this failure, Zhang's failure to object to the search is of little value in assessing voluntariness. Without evidence that Zhang was informed of his right to deny the search, the Court deems his failure to object to the search

7

As for the final factor (belief incriminating evidence would be found), the evidence shows that the alleged contraband was found on the floor of the automobile, inside a plastic bag, inside two socks.[6] Given the fact these items were not in plain view, Zhang "could have easily believed no incriminating evidence would be found." *United States v. Longoria*, 370 F. App'x 481, 486 (5th Cir. 2010). Accordingly, the sixth factor weighs in favor of Zhang.

In sum: (1) the fifth factor weighs heavily in Zhang's favor; (2) the first, fourth, and sixth factors weigh in Zhang's favor; and (3) the second and third factors weigh in the Government's favor. Under these circumstances, the Court must conclude that the consent was not voluntary and that, therefore, the Government's search was not supported by valid consent.[7]

### B. Automobile Exception

"Under the automobile exception, police may stop and search a vehicle without obtaining a warrant if they have probable cause to believe it contains contraband." *United States v. Beene*, 818 F.3d 157, 164 (5th Cir. 2016). "Law enforcement may conduct a warrantless search of an automobile if (1) the officer conducting the search had probable cause to believe that the vehicle in question contained property that the government may properly seize; and (2) exigent circumstances justified the search." *United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010). The automobile exception allows for searches of "compartments and containers within the automobile so long as the search is supported by probable cause." *California v. Acevedo*, 500 U.S. 565, 570 (1991). To this end, "[t]he scope of a warrantless search of an automobile ... is not defined by the nature of the container in which the contraband is secreted.

---

to be of little weight. *Cf. United States v. Conrod*, 134 F. App'x 645, 647 (5th Cir. 2005) ("Conrod admitted that he knew he could refuse to give consent to the search and that he did not object during the search.").

[6] It is unclear whether the credit cards located in plain view between the driver's and passenger seats were contraband. If they were contraband, this factor would weigh in favor of the Government. The ultimate conclusion regarding voluntariness would not, however, change.

[7] Having reached this conclusion, the Court declines to address the scope of Zhang's non-existent consent.

Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824 (1982). Thus, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id*. at 825.

As an initial matter, where, as here, a car has been stopped on a road, the exigent circumstances requirement is satisfied.[8] *See Florida v. Meyers*, 466 U.S. 380, 381 (1984) ("[P]olice officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant."). Accordingly, the Court must decide whether the searches of the vehicle and the search of the plastic bag were supported by probable cause.

"It is well-settled that probable cause to search an automobile exists when trustworthy facts and circumstances within the officer's personal knowledge would cause a reasonably prudent man to believe that the vehicle contains contraband. Probable cause determinations are not to be made on the basis of factors considered in isolation, but rather on the totality of the circumstances." *Banuelos-Romero*, 597 F.3d at 767 (internal citations omitted). "[T]he subjective belief of the police officer regarding whether he has probable cause is irrelevant to the determination."[9] *United States v. Steele*, 353 F. App'x 908, 910 (5th Cir. 2009) (citing *United States v. Cooper*, 949 F.2d 737, 744–45 (5th Cir. 1991)).

---

[8] At the hearing, Defendants argued that because the officers could have obtained a search warrant within thirty minutes, the circumstances were not exigent. However, case law does not require "a finding of exigent circumstances other than the fact of the automobile's potential mobility." *United States v. Sinisterra*, 77 F.3d 101, 104 (5th Cir. 1996).

[9] Defendants argued that the Government cannot show probable cause because neither Chism nor Cossitt testified they believed they had probable cause. Because probable cause is an objective inquiry, the officers' opinions on the presence (or absence) of probable cause have no bearing on the probable cause analysis. *Cooper*, 949 F.2d at 744–45 ("[T]he subjective belief of the police that they did not have probable cause does not preclude the government's showing that there was.").

Here, the Government argues the initial stop and subsequent search were both justified by the following facts: (1) Pitner was notified by a cashier at Lowe's that an Asian male attempted to make a fraudulent credit card transaction; (2) Pitner observed the man drive away in a vehicle; (3) Pitner immediately stopped the vehicle; and (4) credit cards were in plain view of the officers during the stop.

The Court agrees with the Government. An officer who has observed a man enter an identified automobile after being accused of using a stolen credit card would have probable cause to believe the automobile contains stolen credit cards. Accordingly, the officers had authority to search the vehicle and any container that may have contained such items. There can be no dispute that the plastic bag and the socks may have contained stolen credit cards.[10] Therefore, the automobile exception justified the search of these items.

### C. Inevitable Discovery

Under the inevitable discovery exception to the exclusionary rule, evidence obtained in violation of the Fourth Amendment will not be excluded if there was "a reasonable probability that the evidence would have been discovered from an untainted source." *United States v. Hernandez*, 670 F.3d 616, 623 (5th Cir. 2012). To invoke this rule, the Government must prove "that the information ultimately or inevitably would have been discovered by lawful means" and that it "was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." *Id.*; *United States v. Jackson*, 596 F.3d 236, 241 (5th Cir. 2010). "For the inevitable discovery exception to apply, the alternate means of obtaining the evidence must at least be in existence and, at least to some degree, imminent, if yet unrealized."[11] *United States v.*

---

[10] Fraudulent cards were indeed found in the socks.

[11] The Government, citing Fifth Circuit and out-of-circuit authority, argues that "[t]here are a line of cases that suggest that a showing of active pursuit of an alternate line of investigation at the time of the constitutional violation is no longer, a prerequisite, but rather, that the contested evidence would simply have been discovered through other

*Zavala*, 541 F.3d 562, 580 (5th Cir. 2008) (internal quotations omitted). The Government argues, "it is clear that the contested evidence would have eventually been discovered through the pursuit of a state search warrant, even in the absence of consent to search." Doc. #32 at 9.

First, the Government bases its inevitable discovery argument on the ground that, had Zhang not given consent, the officers would have obtained a search warrant. This testimony, standing alone, is insufficient to support a finding of reasonable probability under the first prong of the inevitable discovery doctrine. *See United States v. Goree*, 365 F.3d 1086, 1089 n.2 (D.C. Cir. 2004) ("The government based its inevitability claim on the testimony of [officers], each of whom testified that, but for [the] mistake about consent, he would have stopped the search and sought a warrant .... [W]hile the circuits disagree over the scope of the doctrine, neither this *nor any other circuit* has yet extended it as far as would be required to justify the gun's seizure here.") (collecting cases) (emphasis added).

Next, where the Government claims inevitable discovery on the possibility of a search warrant, a court must ask whether the officers had made any effort to obtain the warrant at the time of the illegal search. *See United States v. Cherry*, 759 F.2d 1196, 1206 (5th Cir. 1985) ("[B]ecause at the time of the warrantless search the agents could have obtained a warrant but had made no effort to do so, we find ... that the district court erred in holding the evidence admissible under the inevitable discovery exception."). While this is not a high threshold, it

---

means." Doc. #32 at 9 n.2 (citing *United States v. Fitzharris*, 633 F.2d 416, 421 (5th Cir. 1980); *United States v. Medina*, 887 F.2d 528, 533 n.7 (5th Cir. 1989); *United States v. Namer*, 835 F.2d 1084, 1088 (5th Cir. 1988); *Wicker v. McCotter*, 783 F.2d 487, 498 (5th Cir. 1986)). *Wicker* involved a clear error review of the Texas inevitable discovery doctrine. *Fitzharris* and *Namer* applied the inevitable discovery doctrine to knowledge gained from independent sources, circumstances not presented here. *Medina* involved application of the inevitable discovery doctrine without mention of the alternative line requirement. None of these authorities, or any out of circuit authority, may undermine the clear statements of law contained in numerous Fifth Circuit cases. *See United States v. Zavala*, 541 F.3d 562, 581 (5th Cir. 2008); *Hernandez*, 670 F.3d at 623; *Jackson*, 596 F.3d at 241; *United States v. Ochoa*, 667 F.3d 643, 650 (5th Cir. 2012). Even if the active pursuit line did not apply, the Government's inevitable discovery argument would still fail because, as explained below, they have not shown a reasonable probability of obtaining the evidence.

requires some action on the part of the officers directed at obtaining a warrant. *See United States v. Lamas*, 930 F.2d 1099, 1103 (5th Cir. 1991) (noting *Cherry* relied on fact "that at the time of the warrantless search the agents 'had made no effort' to secure a warrant").

Here, it is clear the officers were not actively pursuing an alternate line of investigation at the time of the warrantless search. While both officers testified they would have obtained a search warrant if they had not received consent, there is no evidence either officer even contemplated the possibility of obtaining a search warrant until after the fact. Accordingly, because the officers were not actively pursuing a search warrant at the time of the constitutional violation, the inevitable discovery doctrine does not apply.[12] *Cherry*, 759 F.2d at 1206.

## V
## Conclusion

For the reasons above, Zhang's motion to suppress [22] and Li's joinder [27] are **DENIED**.

**SO ORDERED**, this 16th day of September, 2016.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[12] Even if the active pursuit requirement did not apply, the Government's argument would still fail. Any other result would allow law enforcement officers to legitimize a warrantless search after the fact by simply stating what they would have done (sought a warrant) and what result would have been obtained by their actions (the warrant sought would have been issued). This Court questions whether such presumptions of fact would pass constitutional muster.